# In the United States Court of Federal Claims

No. 20-700C
(Filed Under Seal: September 21, 2020)
(Reissued: October 5, 2020) [1]

*************************************

**VERTEX AEROSPACE, LLC,**

        Plaintiff,

        v.

**THE UNITED STATES,**

        Defendant,

and

**STRATEGIC AIRBORNE OPERATIONS, LLC,**

        Defendant-Intervenor.

\* Post Award Bid Protest; Motion to Dismiss;
\*Motion for Judgment on the Administrative
\* Record; Best-Value; *Allied Tech. Group, Inc. v.*
\**United States*, 649 F.3d 1320 (Fed. Cir. 2011)
\* *Bannum, Inc. v. United States*, 404 F.3d 1346
\*(Fed. Cir. 2005)

*************************************

*Joseph Alexander Ward*, Washington, DC, for Plaintiff

*Nathanael Brown Yale*, United States Department of Justice, Washington, DC, for Defendant

*Robert Kiel Tompkins*, Washington, DC, For Defendant- Intervenor

## OPINION AND ORDER

**DAMICH, Senior Judge**

On June 9, 2020, Plaintiff Vertex Aerospace, Inc. ("Vertex"), filed this post-award bid protest challenging the award of a contract to Strategic Airborne Operation, JV, LLC ("SAO")[2]

---

[1] The parties were directed to provide the Court with redactions. The parties complied. Redactions are indicated by [ ].

[2] Defendant-Intervenor SAO was granted leave to intervene on June 12, 2020. ECF No. 19.

in connection with the Naval Air Warfare Center's ("NAVAIR" or "Agency") procurement of air support services under Solicitation No. N00421-18-R-0009 (the "RFP"). The award provided for a four-year and 364 day, indefinite-delivery, indefinite quantity ("IDIQ") contract providing the best value to the Government to provide aircraft, pilots, and support personnel to fly complex electronic warfare simulation missions at U.S. Military bases across the United States and abroad.

In its protest, Vertex alleges that NAVAIR's evaluation of the proposals violates the RFP and lacks a rational or adequately documented basis. Thus, according to Vertex, NAVAIR's source selection is arbitrary and an abuse of its discretion. As a result, Vertex requests that the Court enter judgment on the administrative record in its favor, declare the Agency's evaluation of proposals was arbitrary and capricious, an abuse of discretion, and otherwise not in accordance with law, enjoin the Agency to cancel its award to SAO, and to order the Agency to conduct further discussions with the offerors, and to reevaluate proposals in accordance with the RFP.

The Court held a status conference on June 16, 2020 and adopted the litigation schedule provided by the parties. The Court entered its scheduling order on the same date. ECF No. 24. On June 23, 2020, the United States ("Defendant") filed an Unopposed Motion for an Extension of Time to File the Administrative Record, ECF No. 25, which was subsequently granted. ECF No. 26. The Administrative Record was thereafter timely filed. ECF Nos. 27, 28, ("AR").

On July 14, 2020, Vertex filed its Motion for Judgment on the Administrative Record. ECF No. 31. The Defendant timely filed its Motion to Dismiss, Response and Cross Motion for Judgment on the Administrative Record on August 4, 2020. ECF No. 34. Defendant-Intervenor filed its Cross Motion for Judgment on the Administrative Record on the same date. ECF No. 33. Thereafter briefing continued as scheduled and was completed on August 18, 2020.

On August 17, 2020, Vertex filed a Motion for Leave to File a Supplement Motion for Judgment on the Administrative Record. ECF No. 36. Both Defendant and SAO objected. Defendant also filed a Motion to Amend or Correct the Administrative Record. ECF No. 42. The Court held a hearing on these motions on August 24, 2020 and granted both motions on the same date. ECF No. 44. A supplemental briefing schedule was issued. *Id*. In accordance with the new schedule, Vertex filed its Supplemental Motion for Judgment on the Administrative Record and Supplemental Appendices on August 25, 2020. ECF Nos. 45, 46, 47. Then, on August 28, 2020, Vertex filed a Notice to Withdraw its Supplemental Motion and Appendices which the Court construes as a Motion to Strike. The Court **GRANTS** the Motion and the Supplemental Motions, ECF Nos. 45, 46, and 47 are **STRICKEN**.

As provided by the Court's order dated August 24, 2020, ECF No. 44, on August 28, 2020, Vertex filed an Amended Complaint.[3] ECF No. 51. The Amended Complaint alleges that the Agency's award of a contract to SAO was based upon an arbitrary, capricious, and unlawful

---

[3] The Complaint was amended to include Vertex's additional grounds for protest which were raised for the first time in its Motion for Judgment on the Administrative Record. Pursuant to the representations at the hearing on August 24, 2020, Defendant and SAO's briefings responded to Vertex's arguments with respect to these grounds for setting aside the contract award, therefore, no additional briefing was necessary.

evaluation for the following reasons: (1) SAO failed to meet the RFP's minimum security requirements, (2) the Agency's price evaluation was unreasonable, (3) the Agency arbitrarily and disparately inflated SAO's corporate experience and past performance, (4) the Agency arbitrarily minimized Vertex's technical advantages, and (5) the Agency's best value tradeoff was irrational.

After careful consideration, and for the reasons set forth below, the Court **DENIES** Plaintiff's Motion for Judgment on the Administrative Record and **GRANTS** Defendant's Partial Motion to Dismiss and Cross Motion for Judgment on the Administrative Record. The Court further **GRANTS** Defendant-Intervenor's Cross Motion for Judgment on the Administrative Record.

## I. Facts

### A. The RFP

On March 21, 2019, in accordance with the acquisition plan, and after obtaining certain approvals for the effort, the Agency issued its RFP. AR at 842. The Navy issued six amendments to the RFP with the final amendment issued on March 16, 2020. *Id*. at Tabs 9-14. The RFP Part I, Section A informed offerors that the acquisition would result in the placement of an award of a single firm-fixed-price, indefinite-delivery, indefinite-quantity (IDIQ) contract with a four-year and 364-day ordering period and that the contractor would be required to have a SECRET Facility clearance upon award. *Id*. at 843.

The Agency would evaluate proposals using the following factors, in descending order of importance: (1) Corporate Experience, (2) Technical, (3) Past Performance, and (4) Price. *Id*. at 956. For the Corporate Experience and Past Performance Factors, the RFP provided that the Agency would assign a "Confidence Assessment Rating" based on an "integrated assessment" of all elements. *Id.* at 957-58.

In particular, with respect to Corporate Experience, the Agency was to evaluate the degree to which the offeror or its principal entities performed or managed similar efforts, and the extent to which similar activities and tasks were performed with a frequency, duration or recency to indicate a certain level of proficiency. *Id*. at 956. This would be assessed for the following elements: (1) Obtaining Flight Clearances, (2) Experience using Electronic Warfare, (3) Ground Operations Procedures/Flight Operations Procedures, and (4) Experience using the CAS HEEWJ Aircraft Classes and Types. *Id*. at 957.

For the Technical Factor, the Agency would assign a Technical Rating and a Technical Risk rating. *Id*. at 957. The Technical Rating would be based on the Agency's assessment of the offeror's "compliance with the solicitation requirements," while the Technical Risk rating would be based on the Agency's consideration of the risk associated with each offeror's technical approach in meeting a particular contract requirement. *Id*. at 957-58. The Agency also was to evaluate each offeror's technical proposal for: (1) Aircraft Performance, (2) Airworthiness, (3) Aircraft Support, (4) Technical Approach, and (5) Small Business Utilization Strategy. *Id*. at 957.

With respect to Past Performance, the Agency was to evaluate customer feedback on the offeror's or its principal entities': (1) meeting technical requirements, (2) meeting schedule requirements, (3) managing the contracted effort, (4) small business utilization, and (5) actions taken to resolve past problems. *Id*. at 958.

Under Price, the RFP indicated that the Agency would evaluate certain contract line items for reasonableness. *Id*. at 958. For others contract line items, the Agency would confirm that the offeror's proposed prices do not exceed the contract line item's "not to exceed amount." *Id*. at 959.

In addition, the successful offeror would be selected on the basis of "best value" to the Government, all factors considered. *Id*. at 956. Specifically, RFP Part IV, Section M set forth the terms and conditions of the solicitation. As relevant to this protest, the Section M of RFP provided:

> The Government expects to select one Offer on the basis of its proposal providing the "best value" to the Government, all factors considered. "Best Value" means the expected outcome of an acquisition that, in the Government's estimation, provides the overall benefit in response to the requirement. Offerors are advised that proposals meeting the solicitation requirements with the lowest price may not be selected for an award if award to a higher-priced Offeror is determined to be more beneficial to the government. However, the perceived benefits of the higher-priced proposal must merit the additional price.

*Id.* at 956.

### B. The Agency's Receipt and Evaluation of Vertex and SAO's Proposals by SSEB

The Agency received proposals from Vertex and SAO. *Id*. at Tabs 22-23. On December 2, 2019, the Source Selection Authority ("SSA") decided to set a competitive range which included both offerors and to enter into discussions. *Id*. at Tab 35. On December 3, 2019, competitive range letters with accompanying evaluation notices were sent to both offerors. *Id.* at Tabs 36-37; 40-41. Discussions closed on March 13, 2020 and both offerors submitted timely final proposal revisions by March 18, 2020. *Id.* at Tabs 45-51.

After final proposal revisions, the Agency evaluated both proposals in accordance with the RFP and the source selection plan. *Id.* at Tabs 52-57. On April 30, 2020, the Source Selection Evaluation Board ("SSEB") issued its report with its findings summarized as follows:

| Factor | | SAO | Vertex |
|---|---|---|---|
| **Corporate Experience** | | Satisfactory Confidence | Substantial Confidence |
| **Technical** | Rating | Outstanding | Outstanding |
| | Risk | Low | Low |
| **Past Performance** | | Satisfactory Confidence | Substantial Confidence |
| **Price** | | $146,834,175.00 | $260,093,424.00 |
| **Terms and Conditions** | | No Issues | No Issues |
| **Awardability** | | Awardable | Awardable |

AR at 14443.

In support of its findings the SSEB found the following:

1. Corporate Experience:

SAO:  Twelve contracts were considered.  Eight of them were deemed Somewhat Relevant and four were deemed to be Not Relevant.  Six of the contracts were both recent and relevant, and through a combination of the contracts SAO demonstrated experience across all four elements of Corporate Experience.  There was a reasonable expectation that SAO would successfully perform.  *Id.* at 14365-71.

Vertex:  Five contracts were considered.  Four of them were determined to be Very Relevant or Somewhat Relevant, and one Not Relevant.  Based on the four contracts the SSEB found a "high expectation" that Vertex will successfully perform.  *Id.* at 14372-76.

2. Technical Factor:

SAO:  It demonstrated an exceptional approach and understanding of the requirements, and was assigned nine strengths, no weaknesses, uncertainties nor any deficiencies.  AR 14385-97.  It scored a Technical risk rating of Low with the proposal being assigned zero deficiencies and weaknesses.  It was also assigned three risk reducers.  *Id.* at 14397.

Vertex:  Four strengths and no deficiencies or uncertainties were assigned and scored a Technical Risk rating of Low with six risk reducers and no significant weaknesses.  *Id*. at 14411-12.

3. Past Performance:

SAO:   No adverse past performance information was identified.  References for the contracts were deemed relevant and contained satisfactory to excellent past performance ratings in all areas with no adverse information noted.  *Id*. at 14423-24.

Vertex:  Four contracts demonstrated positive performance across all past performance elements with Satisfactory to Excellent past performance ratings in all areas. No adverse past performance was noted.  *Id.* at 14433.

4.  Price:

The proposals were evaluated for reasonableness using three methods: (1) comparison to other proposals; (2) comparison to industry data; and (3) comparison to the IGCE.  AR 14434-42.  Based on this analysis it determined "that the overall proposed prices of both Offerors were considered fair and reasonable."  *Id*. at 14442.

### C.  The SSA Decision

The SSA reviewed and relied on the SSEB report in conducting the trade-off analysis to determine its decision.  AR at 14443.  First, the SSA "determined that Vertex has a slight advantage over SAO in Corporate Experience, the most important factor."  *Id.* at 14473.  In support of this finding, the SSA pointed to Vertex's "full depth and full breadth on Very Relevant and Somewhat Relevant Contracts and that SAO demonstrated full depth and full breadth of Corporate Experience" with respect to only Somewhat Relevant contacts.  *Id*.

With respect to the second most important factor—Technical—the SSA determined that SAO had an advantage "due to the nature and quality of its Technical strengths" in the Compliance rating.  *Id*.  According to the SSA, both offerors received similar strengths performance characteristics of their proposed aircraft capabilities. The SSA found that SAO had received five additional strengths beyond the four shared strengths, and that these strengths "provide measurable benefits to the Government by exceeding the requirements" of the performance work statement.  *Id*.  The SSA also determined, with regard to the Technical Risk Rating, that Vertex had a "slight advantage" because it could leverage current data systems, aircraft, and personnel from similar contracts.  *Id*.  The SSA then compared the Compliance Rating with the Risk Rating and determined that "SAO has a slight advantage in the overall Technical evaluation."  *Id*.  He then concluded "that the Government will realize a greater benefit from the additional strengths derived from the SAO technical proposal."  *Id*.

With respect to Past Performance, the SSA found Vertex to have a "slight advantage" because "their portfolio of contract references demonstrates performance on two Very Relevant and two Somewhat Relevant contracts rather than all Somewhat Relevant contracts from SAO."  *Id*. at 14474.  With respect to price, the SSA found SAO's to be "significantly lower" than Vertex's price.  *Id*.

In the end, the SSA found that although he had "slightly higher confidence in Vertex" under Corporate Experience and Past Performance due to its two very relevant contract references, SAO presented the best value based on its slight advantage in the Technical factor and due to its significantly lower price.  *Id*.  He then concluded that he did not find any aspect or combination of aspects that "would merit the significant price premium of $113.2 million over SAO's proposed price."  *Id*.  Thereafter, the SSA selected SAO for award, determining that its

"proposal provides the best value for the CAS HEEWJ Capabilities Program, all factors considered." *Id*. at 14472

In light of the SSA's decision, on May 13, 2020, the Agency awarded the contract to SAO. *Id*. at 14548. On June 9, 2020, Vertex filed this protest, ECF No. 1.

## II.   Standard of Review

### A.  Standard for Motions to Dismiss

Pursuant to RCFC 12(b)(1) and 12(b)(6), a Court must dismiss a case if it finds that it does not have jurisdiction over plaintiff's claim or that plaintiff has failed to state a claim upon which relief can be granted. When a defendant challenges this Court's jurisdiction, the plaintiff bears the burden of providing subject matter jurisdiction. *Reynolds v. Army & Air Force Exch. Serv*., 846 F.2d 746, 748 (Fed. Cir. 1988).

### B.  Standard for Motion for Judgment on The Administrative Record

This Court decides a motion for judgment upon the administrative record pursuant to RCFC 52.1. The Court determines whether "given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record." *Bannum, Inc. v. United States*, 404 F.3d 1346, 1356-57 (Fed. Cir. 2005). "[T]he judgment on an administrative record is properly understood as intending to provide for an expedited trial on the record." *Id*. at 1356.

### C.  Bid Protest Standard of Review

The Court has jurisdiction under the Tucker Act, 28 U.S.C. section 1491(b)(1). The Tucker Act, as amended by the Administrative Disputes Resolution Act of 1996, 28 U.S.C. section 1491(b)(1), grants this Court exclusive jurisdiction to "render judgment on an action by an interested party objecting to a solicitation by a Federal Agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or proposed procurement." 28 U.S.C. § 1491(b)(1). Under the Tucker Act, an "interested party" includes an actual or prospective offeror whose direct economic interest would be affected by or which has suffered a non-trivial competitive injury or prejudice as a result of the alleged error. *Sys. Application & Tech., Inc. v. United States*, 691 F.3d 1374, 1382 (Fed. Cir. 2012).

In a bid protest, the trial court "review[s] the agency's decision pursuant to the standards set forth in section 706 of Title 5," the Administrative Procedure Act ("APA"). 28 U.S.C. § 1491(b)(4); *see Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1350 (Fed. Cir. 2004). Pursuant to the standards set forth in the APA, the trial court determines whether the agency's actions were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706. Application of the arbitrary and capricious standard involves neither judicial fact finding nor review of the agency's factual statements for "substantial evidence." *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1057-58 (Fed. Cir. 2000) (citing *Camp v. Pitts*, 411 U.S. 138, 141-42 (1973)). "The arbitrary and

capricious standard applicable [in bid protests] is highly deferential [and] requires a reviewing court to sustain an agency action evincing rational reasoning and consideration of relevant factors." *Advanced Data Concepts*, 216 F.3d at 1058.

A procurement decision may be set aside "if either: (1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001) (citations omitted). In reviewing a challenge brought under the first ground, the Court "determine[s] whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion, and the disappointed bidder bears a heavy burden of showing that the [decision] had no rational basis." *Centech*, 554 F.3d at 1037 (quoting *Impresa*, 238 F.3d at 1332-33). For a challenge brought under the second ground, "the disappointed bidder must show a clear and prejudicial violation of applicable statutes or regulations." *Id. (quoting Impresa*, 238 F.3d at 1333). To establish prejudice, a protestor must demonstrate that there was a ''substantial chance'' it would have received the contract award. *Bannum, Inc. v. United States*, 404 F.3d at 1358; *see also JWK Int'l Corp. v. United States*, 279 F.3d 985, 988 (Fed. Cir. 2002).

Where, as here, the contract award is based upon the "best value," the agency has even greater discretion than if the contract were awarded upon the basis of cost alone. *Galen Medical Assoc., Inc. v. United States*, 369 F.3d 1324, 1330 (Fed. Cir. 2004); *E.W. Bliss Co., v. United States*, 77 F.3d 445, 449 (Fed. Cir. 1996). "[P]rocurement officials have substantial discretion to determine which proposal represents the best value for the government." *Id*. at 449 (citation omitted). A best-value determination should not be disturbed so long as the agency "documents its final award decision and includes the rationale for any business judgments and tradeoffs made." *Blackwater Lodge & Training Center, Inc. v. United States*, 86 Fed. Cl. 488, 514 (2009). Moreover, "[a]n agency's contract award is thus least vulnerable to challenge when based upon a best value determination." *Planetspace, Inc. v. United States*, 96 Fed. Cl. 119, 125 (2010) (citing *Galen*, 369 F.3d at 1330).

### III. Discussion

In its five count Amended Complaint, filed to conform with its Motion for Judgment on the Administrative Record , Vertex alleges the following: Count I: The Agency's failure to evaluate SAO's compliance with the RFP's requirement to hold a SECRET Facilities Clearance, and the Agency's subsequent award of a contract to SAO, was arbitrary, capricious, contrary to the terms of the RFP and an abuse of the Agency's discretion; Count II: The Agency's price evaluation was unreasonable; Count III: The Agency arbitrarily and disparately inflated SAO's corporate experience and past performance; Count IV: The Agency arbitrarily minimized Vertex's technical advantages; and Count V: The Agency's best-value tradeoff was irrational. In response, Defendant and SAO argue that Count I must be dismissed for lack of jurisdiction and that it should be awarded judgment on the Administrative Record with regard to the remaining counts. In the alternative, Defendant and SAO argue that if Count I survives the Motions to

Dismiss, judgment should still be entered in its favor on this Count. The Court will consider the Motions to Dismiss[4] first.

### A. Count I Is Dismissed

In Count I of Vertex's Amended Complaint and Motion for Judgment on the AR, Vertex argues that the RFP required possession of a SECRET facility clearance at (or prior to) award relying on the language in RFP which states:

> The Contractor shall have a SECRET facility clearance upon award. Security clearance requirements are identified in Section C – Performance-Based Work Statement (PBWS), and Attachment (1) – DD Form 254.

AR at 843. At the time of award, SAO did not possess such a clearance. Therefore, according to Vertex, the Agency acted arbitrarily and contrary to the terms of the RFP by awarding the contract to SAO. ECF No. 31-1 at 16-19.

In contrast, Defendant argues that Count I must be dismissed as it is a contract administration claim which is beyond this Court's jurisdiction. ECF No. 34 at 14-15. Specifically, Defendant argues that "based on the language of the RFP, the requirement to have a SECRET facility clearance only arose 'upon award.'" *Id*. at 15. Defendant further argues that "if the RFP required possession of a SECRET facility clearance at the exact moment of award, or even prior to award, SAO's proposal represented that it would meet this requirement, and there was nothing on the face of the proposal to indicate that it would be non-compliant." *Id*. In the alternative, Defendant and SAO argue that the claim has been waived. *Id*. at 14; ECF No. 33-1 at 23-24.

It is well settled that where an offeror has certified that it meets the technical requirements of a solicitation, its "potential failure to comply with the proposal requirements is ordinarily 'a matter of contract administration,' which does not go to the propriety of accepting the bid." *Allied Tech. Group, Inc. v. United States*, 649 F.3d 1320, 1330-31 (Fed. Cir. 2011). The Federal Circuit has recognized an exception to this rule for when "a proposal, on its face, should lead an agency to the conclusion that an offeror could not and would not comply with the [applicable requirement]," it has considered it to be a "matter of the proposal's technical acceptability." *Id*. at 1330.

In its proposal, SAO stated: "Strategic Air is in the process of obtaining a Top Secret [clearance] which will be in place prior to award." *Id.* at 1160. SAO also certified that it would comply with all requirements of the RFP. AR at 1158. Thus, it is clear that SAO did not propose to violate the security clearance requirement; instead SAO represented that it would comply with it. *See Allied Tech.*, 649 F.3d at 1330.

---

[4] Although SAO has not captioned its Cross-Motion and Response as a Motion to Dismiss as well, the Motion clearly articulates that SAO is arguing this Court lacks jurisdiction with regard to Count I and thus must be dismissed.

Yet, Vertex asserts that the Agency acted arbitrarily by failing to evaluate "SAO's compliance with the RFP's requirement to hold a SECRET Facility clearance," noting that in response to a debriefing question the Agency stated that it "did not conduct an assessment of whether or not Offerors possess or would possess a SECRET Facility clearance." ECF No. 31-1 at 19. But the evaluation criteria never stated that the Agency would conduct an investigation of the offerors' ability to possess a facility clearance. It was therefore appropriate for the Agency to rely on the representations of SAO that they would comply with all requirements.

Vertex also argues that SAO misrepresented its ability to comply with the SECRET facility requirement. ECF No. 31-1 at 16-17. However, that dispute is properly between the Agency and SAO, not the Court. *See Guardian Moving and Storage Co., Inc. v. United States*, 122 Fed. Cl. 117, 139 (2015) ("If the agency accepts a proposal based on a misleading representation, the dispute is solely between the agency and the awardee as a matter of contract administration.") (quoting *Furniture by Thurston v. United States*, 103 Fed. Cl. 505, 519-20 (2012) (internal quotations omitted). Therefore, because the issue is a matter of contract administration, this Court lacks jurisdiction. The Court dismisses Count I.[5]

### B. The Agency's Evaluation of SAO's Corporate and Past Performance is Rational

In its motion, Vertex contends that the Agency disparately evaluated the offeror's proposals under the Corporate Experience and Past Performance factors. ECF No. 31-1 at 19-28. Specifically, Vertex argues that the Agency: (1) disparately evaluated the relevancy of SAO and Vertex's contract references; (2) credited SAO for subcontractor experience unrelated to the work the subcontractor was to perform; (3) engaged in unequal discussions concerning jamming programming; and (4) did not recognize that SAO failed to provide relevant experience for its majority member, Aery Aviation. Accordingly, Vertex argues that the Court should determine that the Agency's evaluation of the offerors' Past Performance and Corporate Experience was arbitrary and capricious. *Id*. In addition, Vertex contends that the Agency acted irrationally because its evaluation reflected that its proposal was higher rated on both the Corporate Experience and Past Performance factors with respect to the three non-price factors combined. *Id*.

"The disappointed bidder bears a 'heavy burden' of showing that the award decision 'had no rational basis.'" *Impresa Construzioni*, 238 F.3d at 1333; *see also Cont'l Bus. Enters., Inc. v. United States,* 196 Ct. Cl. 627, 452 F.2d 1016, 1021 (1971) (noting the "unusually heavy burden of proof" when a technical determination is challenged). When the Court reviews an evaluation of past performance information in a negotiated procurement, the greatest deference possible is given to the agency. *Glenn Def. Marine (ASIA), PTE Ltd. v. United States*, 720 F.3d 901, 909 (Fed. Cir. 2013). Thus, this Court's review of the evaluations is limited to determining whether they are reasonable and supported by the facts. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). To justify an interference with the agency's exercise of discretion regarding the relevance of an offeror's past performance, the protester must demonstrate that the agency determination regarding relevance "lacked any rational basis."

---

[5] Because the Court holds that it lacks jurisdiction, the Court need not address the other arguments raised by the parties.

10

*Overstreet Elec. Co., Inc. v. United States*, 59 Fed. Cl. 99, 117 (2003), *appeal dismissed*, 89 F. App'x 741 (Fed. Cir. 2004).

1. **The Agency Did Not Disparately Evaluate the Relevancy of SAO and Vertex's Contract References and Cannot Demonstrate Prejudice**

To prevail on its disparate treatment claim regarding application of the evaluation criteria, Vertex must show that the Agency did not treat it and SAO equally.  *See CW Gov't Travel, Inc. v. United States*, 110 Fed. Cl. 462, 490 (2013) ("It is well-established that a 'contracting agency must treat all offerors equally, evaluating proposals evenhandedly against common requirements and evaluation criteria.'") (quoting *Banknote Corp. of Am., Inc. v. United States*, 56 Fed. Cl. 377, 383 (2003)). "Equal treatment, however, does not require that all proposals be treated the same."  *See* 48 C.F.R. § 1.102–2(c)(3) ("All contractors and prospective contractors shall be treated fairly and impartially but need not be treated the same.").

In its review, and pursuant to the RFP, the Agency only considered contract references in Corporate Experience and Past Performance that were deemed relevant.  AR at 957-58, 962; 14331 (indicating that the reference needs to be found to be at least Somewhat Relevant to be considered relevant).  Here, the Agency determined that SAO had eight references that were deemed relevant finding them "somewhat relevant" whereas Vertex had two references that were found to be "very relevant" and two references that were found to be "somewhat relevant."  *Id*. at 14334-35.

The final determination, contends Vertex, is that the Agency disparately evaluated its references by strictly enforcing the RFP requirement that experience operating aircraft must include [  ], but the Agency did not strictly enforce the requirement for SAO.  ECF No. 31-1 at 20-23.  In particular, Vertex argues that the Agency engaged in disparate treatment when evaluating each offeror's contract references because two of SAO's references received a "Somewhat Relevant" rating whereas, one of Vertex's references received a "Not Relevant" rating even though both offerors' references allegedly failed to demonstrate experience [  ].

Vertex cannot meet the standard for demonstrating a disparate treatment claim.  As the Court of Appeals for the Federal Circuit held in *Office Design Group v. United States*, to prevail on a disparate treatment claim a protestor must show either "that the agency unreasonably downgraded its proposal for deficiencies that were 'substantively indistinguishable' or nearly identical from those contained in other proposals" or "the agency inconsistently applied objective solicitation requirements between it and other offerors, such as proposal page limits, formatting requirements, or submission deadlines." 951 F.3d 1366, 1372 (Fed. Cir. 2020). Only if a protester meets one of these thresholds can the reviewing court "comparatively and appropriately analyze the agency's treatment of proposals without interfering with the agency's broad discretion in these matters." *Id*. at 1373.

Applying the standard set forth in the *Office Design Group,* Vertex's reference is not "substantively indistinguishable" from SAO's two references.  As the Agency observed these references involved different contracts, with different agencies, and different scopes of work.  *Compare* AR at 14335-37 *and* 14343-45 (SAO's two references) *with* 14356-57 (Vertex

11

reference). The Agency rationally considered the different aspects of each reference and, within its reasonable discretion and assigned the appropriate ratings. *Id*.

Even if the Court were to find that the Agency engaged in disparate treatment, Vertex cannot demonstrate how it was prejudiced since its other past performance references demonstrated experience [ ], *id*. at 14355, 14358, 14359, 14361, and Vertex received a "Substantial Confidence" rating in the Past Performance factor. *Id*. at 14375-76 ('[t]he Offeror demonstrated extensive corporate experience Obtaining Flight Clearances[.]"). B*annum,* 404 F.3d at 1358.

### 2. The Agency Reasonably Credited SAO for [ ] Experience

Vertex next argues that in the Agency's evaluation of SAO's proposal, the Agency improperly relied on contract references performed by its proposed subcontractor [ ] to demonstrate the full breadth and depth of experience for the "Obtaining Flight Clearances" element despite SAO's proposal not stating that [ ] would be obtaining flight clearances for the contract. ECF No. 31-1 at 23-24. According to Vertex, the Agency should have recognized that SAO failed to demonstrate any relevant experience in obtaining flight clearances and therefore, this should have secured it a "Limited Confidence" rating in Corporate Experience and Past Performance. *Id*.

Pursuant to the RFP, the experience needed to be "***related to*** the roles and responsibilities" identified for that team member. AR at 941 (emphasis added). SAO provided that [ ] demonstrated the necessary experience obtaining DoD flight clearances for the Navy and Air Force. *Id*. at 14349. No one seems to dispute [ ] demonstrated past performance in this area. ECF No. 34 at 27. Thus, by having that past performance obtaining NAVAIR airworthiness, the Agency reasonably determined that [ ] understood the allowable modifications to an aircraft and necessary documentation required to facilitate an interim flight clearance from NAVAIR. *See id*. Therefore, the Agency's crediting [ ] experience was reasonable and within its discretion.

### 3. The Agency Did Not Engage in Unequal Discussions

Vertex next argues that the Agency engaged in unequal discussions. Specifically, Vertex contends that the Agency engaged in unequal discussions by "guid[ing] SAO to supplement its experience in DRFM jamming while withholding similar guidance from Vertex." ECF No. 31-1 at 24. According to Vertex, the discussions about jamming "were by no means equal" because the Agency "provided considerably more guidance to SAO than Vertex." *Id.* at 25.

Here, the Agency explained to SAO that DRFM technologies referenced in its submitted contracts appeared to be pre-programmed by Government representatives and therefore were not considered to include DRFM jamming experience. AR at 3120-21. The Agency communicated the same information to Vertex in another manner by notifying Vertex that certain contract references did not demonstrate DRFM jamming experience under evaluation element 2.2.2. *Id*. at 3155. Clearly, the language was different. However, there is no obligation for agencies to use the exact same language or wording while conducting discussions with offerors on similar or

related issues. *See Femme Comp., Inc. v. United States*, 83 Fed. Cl. 704, 735 (2011). Although the language was not the same, the Agency discussed the DRFM jamming experience with both offerors.

However, even if the Court were to hold that the discussions regarding DRFM jamming were unequal—which it does not—Vertex cannot demonstrate prejudice. Again, Vertex received the highest possible confidence rating of "Substantial Confidence" under both Corporate Experience and Past Performance. AR at 14443. Moreover, the Agency's evaluation already identified that Vertex demonstrated DRFM jamming experience through the submission of a contract performed by Phoenix Air. AR at 14360-61. As a result, the additional contracts demonstrating DRFM jamming experience by Vertex would have been of little value and cannot establish prejudice. *Bannum,* 404 F.3d at 1358.

### 4. SAO Was Not Required to Provide Relevant Experience for Its Majority Member, Aery Aviation

Vertex argues that the Agency did not properly consider the experience of SAO personnel. Here, the RFP advised offerors that the Agency did not intend to analyze the experience of their employees, providing that "[p]ersonnel experience is not part of the Corporate Experience factor and will not be considered." AR at 957. Therefore, the Agency was not obligated to consider the experience of any of SAO's personnel.

Vertex's challenges are nothing more than mere disagreement with the Agency's reasonable exercise of its considerable discretion. The record establishes the Agency fairly evaluated the relevancy of each offeror's references and engaged in equal discussions. The Agency's assignment of "Substantial Confidence" to Vertex's proposal and "Satisfactory Confidence" to SAO's proposal for Corporate Experience and Past Performance was rational and nothing to demonstrate how it could possibly be irrational for the Agency to find that Vertex's advantage was not worth a $113 million price premium. Thus, Vertex has not demonstrated prejudice. *Bannum,* 404 F.3d at 1358.

### C. The Agency's Decision was Rational in Its Technical Evaluation

The evaluation of proposals for their technical excellence or quality is a process that often requires the special expertise of procurement officials. Thus, reviewing courts give the greatest deference possible to these determinations. *See E.W. Bliss Co.* 77 F.3d at 449. As the Federal Circuit has stated, challenges concerning "the minutiae of the procurement process in such matters as technical ratings . . . involve discretionary determinations of procurement officials that a court will not second guess." *Id*. at 449; *see also Banknote Corp. of Am. v. United States,* 56 Fed. Cl. at 384 (determining that "naked claims" of disagreement with evaluations "no matter how vigorous, fall far short of meeting the heavy burden of demonstrating that the findings in question were the product of an irrational process and hence were arbitrary and capricious").

Here, Vertex argues that the Agency did not properly evaluate the offerors' technical proposals because it assigned a Risk Reducer[6] to SAO's proposal and not to Vertex's proposal. First, Vertex asserts that the Agency arbitrarily refused to assign it a Risk Reducer for using aircraft with standard airworthiness certificates, even though SAO received a Risk Reducer for using aircraft with standard airworthiness certificates because it "reduces risk of exceeding stand-up schedule." ECF No. 31-1 at 29. Second, Vertex contends that the Agency overlooked the past experience of its subcontractor Phoenix Air in "performing significant modifications on Gulfstream aircraft," which it believed reduced the "risk of exceeding schedule or cost parameters." *Id*. at 30. Third, according to Vertex, the Agency should have assigned it a Risk Reducer based on Vertex's plan to use FAA-approved data for the SOJ modifications. *Id*. Fourth, Vertex argues that the Navy arbitrarily failed to assign it a Risk Reducer based on its experience in installing hard points on other Gulfstream aircraft. *Id*. at 31.

These arguments aside, the Agency assigned Vertex's technical proposal an "Outstanding" Technical rating and a "Low" Technical Risk rating. AR at 14411-12. The record shows that the Agency conducted a thorough and detailed analysis of Vertex's technical proposal. Indeed, the Agency produced a fifteen-page analysis of Vertex's technical proposal. Within that analysis the Agency identified areas of Vertex's proposal that warranted merit. *Id*. at 14397-14412. And, based upon this comprehensive analysis, the Agency was able to rate Vertex with an "Outstanding" Technical rating and a "Low" Technical Risk rating. Given these scores, Vertex cannot claim that the Agency's actions regarding Risk Reducers prejudiced it.

Furthermore, the Risk Reducer involves a judgment that is for the Agency to make. The Agency has supported its decision in a detailed analysis. Therefore, the Court will not second-guess the Agency's decision with regard to its application of the Risk Reducer feature of the RFP. As such, the Agency's decision to not assign certain Risk Reducers to Vertex's proposal was not arbitrary and capricious, or contrary to law.

### D. The Agency's Price-Reasonableness Analysis was Rational

Pursuant to the RFP the "Government will perform a price analysis to assess if the Offeror's proposed price is fair and reasonable." AR at 958. To determine fair and reasonable, the RFP stated that the Government would perform a price analysis assessing whether the offeror's proposed prices were "fair and reasonable," using "various price analysis techniques such [as] a comparison of the offeror's proposed price to competing Offerors' prices in response to this solicitation, comparison to historical pricing for same or similar DoD contracts, comparison to the Government's independent price estimate, comparison to commercial and/or industry standards, amount other techniques to perform the price analysis." *Id*. at 958-59. It also stated that it would evaluate whether offerors exceeded certain not to exceed line items. *Id*.

In addition, the FAR 15.403-1(c)(1) provides that a price is based on adequate price competition when—

---

[6] The RFP defined "Risk Reducer" as "[a]n aspect of an Offeror's proposal that reduces risk in a way that will be advantageous to the Government during contract performance. AR at 961.

    (A) Two or more responsible offerors, competing independently, submit priced offers that satisfy the Government's expressed requirement;

    (B) Award will be made to the offeror whose proposal represents the best value (see 2.101) where price is a substantial factor in source selection; and

    (C) There is no finding that the price of the otherwise successful offeror is unreasonable. Any finding that the price is unreasonable must be supported by a statement of the facts and approved at a level above the contracting officer.

In its evaluation and determination, and in accordance with the RFP, the Agency determined that adequate price competition existed and that both offerors' prices were fair and reasonable. AR at 14442. In keeping with the RFP, the Agency also informed the offerors that the contract was to be awarded to the offeror whose proposal represented the "best value" to the government and that price was factored into the best value determination. *Id*. at 956. In fact, the Agency did not indicate that either of the bids included prices that were unreasonable. *Id*. at 14442 ("the overall proposed prices of both Offerors were considered fair and reasonable").

Vertex raises three complaints with the Agency's best value determination. Specifically, Vertex's contends that the Agency's price evaluation deviated from the RFP by failing to evaluate proposed prices comparatively for each CLIN; failed to establish a rational basis for concluding adequate price competition existed; and failed to document an adequate price reasonableness determination. ECF No. 31-1 at 31-34. The Court will take each argument in turn.

First, Vertex is simply incorrect that the RFP required prices to be analyzed "comparatively for each CLIN." *Id*. at 34. The Court has reviewed the RFP and that language is not there. However, as Vertex correctly points out in its reply, ECF No. 35 at 25, the RFP states: "[t]he Firm Fixed Price (FFP) CLINs . . . shall be evaluated for reasonableness." AR at 958. But that language does not state or indicate that such an evaluation would be conducted through separate line-by-line comparisons. However, the RFP also indicated that Total Evaluated ("TEP") price would be evaluated. *Id*. at 958-59. And that is what the Agency did.

Second, Vertex's assertion that the Agency concluded adequate price competition based on the fact that two competitive offers were received is incorrect. The Agency made a detailed comparison of the TEP for the two offerors. *Id*. at 14434-42. The Agency also compared both offerors' prices to the Independent Government Cost Estimate ("IGCE") as well as industry standards for certain line items price reasonableness. AR at 14436-41. The Agency's price reasonableness analysis was also in compliance with the FAR and to that end was rational.

Third, Vertex contends that the Agency's documentation of its pricing analysis was insufficient. ECF No. 31-1 at 33-34. However, the Agency's analysis included comparisons of the offerors' prices both on the TEP level and by CLIN against each other, against the IGCE and with respect to certain CLINs, against industry standards. Under each of these measures the prices were found to be reasonable, and this documentation is more than sufficient to ascertain

15

the Navy's rational for its pricing decision.  *See, e.g., Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

In is reply, Vertex argues that "[n]owhere – neither in the record nor in its brief – has the Government 'explain[ed] that variations were due to different risk preferences and technical approaches,' or offered any other rationale for overlooking this vast disparity."  ECF No. 35 at 24-25 citing *Dyncorp Int'l LLC v. United States*, 148 Fed. Cl. 568, 581-82 (2020) (quoting *Technatomy Corp. v. United States*, 144 Fed. Cl. 388, 390 (2019)).  Relying on *DynCorp*, Vertex argues that "[t]his lack of analysis is problematic, as price consistency, not inconsistency, demonstrates price reasonableness."  ECF No. 35 at 25. These inconsistencies prejudiced Vertex "because the [Agency] did not conduct a proper price reasonableness analysis in accordance with the Solicitation and the FAR, the Agency could not have accurately determined whether [Vertex's] price was 'unreasonably high'" compared to SAO's, in which case the Agency would be required to raise that concern with Vertex in discussions."  *Id*.

However, Vertex's argument must fail.  It seems that Vertex's argument fits more squarely as a price realism challenge, and price realism is only required when provided for in a solicitation. *See, e.g., United Health Military & Veterans Servs. LLC, v. United States*, 132 Fed. Cl. 529, 554 (2017).  And, this RFP does not provide for such.

Even if the Court were to find error with regard to the Agency's pricing evaluation—which is does not—a plaintiff must demonstrate that it was "prejudiced" by the error, *i.e.*, in "the absence of [the] alleged error, there must be a 'substantial chance' that [the plaintiff] would have received the award."  *JWK Int'l*, 279 F.3d at 988, *see also Bannum,* 404 F.3d at 1358.  Here, as Defendant correctly points out in its reply, ECF No. 39, Vertex appears to contend that if the Navy conducted a proper pricing analysis it should have assigned Vertex a deficiency or significant weakness and engaged in discussions on the issue.  But, nowhere does Vertex assert that it would have actually changed its proposal by lowering its prices.  Again, a plaintiff must demonstrate how it would have improved its proposal enough to give it a substantial chance of award had the pricing analysis been conducted differently.  *See, e.g.*, *Data Gen. Corp. v. Johnson*, 78 F.3d 1556, 1563 (Fed. Cir. 1996); *Bannum*, 404 F.3d at 1358.  And here, the decision of the Agency was clear that there was not "any aspect or combination of aspects in Vertex's proposal that would merit the significant price premium of $113.2 million over SAO's proposed price."  AR at 14474.

### E.  The Agency's Best Value Determination was Rational

Agencies enjoy broad discretion when conducting best value determinations.  *See, e.g., Banknote Corp.*, 365 F.3d at 1355 (observing that "[i]t is well-established that contracting officers have a great deal of discretion in making contract award decisions, particularly, when, as here, the contract is to be awarded to the bidder or bidders that will provide the agency with the best value."); *E.W. Bliss Co.*, 77 F.3d at 449 (observing that "[p]rocurement officials have substantial discretion to determine which proposal represents the best value for the government.").  Even when a solicitation emphasizes technical merit, an agency "may properly select a lower-priced, lower-technically-rated proposal if it decides that the cost premium involved in selecting a higher-rated, higher-priced proposal is not justified, given the acceptable

16

level of technical competence available at the lower price." *Banknote Corp.*, 56 Fed. Cl. at 390 (citation omitted).

At the heart of Vertex's argument, is its argument that the Agency's "best value tradeoff minimized differences in the non-Price evaluation factors and elevated the importance of price, in contravention of the RFP."  ECF No. 31-1 at 26.

The RFP informed offerors that an award would be made "on the basis of [the] proposal providing the 'best value' to the Government, all factors considered."  AR at 956. The RFP further stated that "[a]ll evaluation factors other than Price, when combined, are significantly more important than Price." *Id*.  However, offerors were explicitly advised that "the perceived benefits of the higher-priced proposal must merit the additional price." *Id*.

The Source Selection Decision Document ("SSDD") contains a comprehensive discussion of Vertex's advantages.  *See* AR at Tab 59.  In making his best-value determination, the SSA "thoroughly reviewed" the 134-page Source Selection Evaluation Board Final Proposal Evaluation Report which contained an extensive and in-depth analysis of each offeror's proposals under all of the evaluation factors.  *Id*. at 14472.  In its determination, after considering all the factors, the SSA then concluded–in accordance with the RFP–that there was not "any aspect or combination of aspects in Vertex's proposal that would merit the significant price premium of $113.2 million over SAO's proposed price."  *Id*. at 14474.

The record demonstrates that the Agency properly evaluated both proposals against the evaluation criteria set forth in the solicitation, discussed their comparative advantages and disadvantages in an objective fashion, and documented a reasonable rationale for its best-value tradeoff decision.  The Court holds that the Agency's determination that "SAO's proposal is the best value and provides the greatest overall benefit to the Government," *id*. at 14474, was reasonable, in compliance with the Solicitation's evaluation criteria, and otherwise in accordance with law.

## IV.   Conclusion

For the reasons set forth above, the Court **DENIES** Plaintiff's Motion for Judgment on the Administrative Record.  The Court further **GRANTS** Defendant's Motion to Dismiss Count I and **GRANTS** Defendant's and Defendant-Intervenor's Cross Motion for Judgment on the Administrative Record.  In light of this Opinion and Order the Court **DENIES** Plaintiff's request for injunctive and declaratory relief.  The Clerk is directed to enter judgment accordingly.

The parties shall file its redactions within 7 days from the date of this Opinion and Order.

**IT IS SO ORDERED.**

Edward J. Damich
EDWARD J. DAMICH
Senior Judge
